UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC C. DAVIESSON,<br>    Plaintiff,<br>  v.<br>RON BROOMFIELD,<br>    Defendant. | Case No. 20-cv-03568-EMC<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

Eric Daviesson, a prisoner currently incarcerated at San Quentin State Prison, filed this *pro se* action for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent filed an answer and Mr. Daviesson filed a traverse. Mr. Daviesson's petition is now before the Court for review on the merits. For the reasons discussed below, the petition for writ of habeas corpus will be denied.

## II. BACKGROUND

On July 3, 2013, Mr. Daviesson pled no contest to committing three counts of assault with force likely to cause great bodily injury, three counts of vandalism, one count of robbery, one count of possession of a sap or similar weapon, one count of making criminal threats, one count of forcibly dissuading a crime victim from reporting that crime and one count of felony reckless driving while fleeing from a police officer. Clerk's Transcript ("CT") at 89-94. Mr. Daviesson also admitted that one of his assaults inflicted great bodily injury on the victim, that two of his assaults constituted hate crimes, that he had committed the reckless driving offense while on bail for two other offenses and that he had served a prior prison term. CT at 89-94. Pursuant to a plea agreement, on August 5, 2013, the trial court imposed a 20-year prison sentence, but suspended

execution of that sentence and placed Mr. Daviesson on probation for five years. Reporter's Transcript ("RT") at 253-54, 306-08.

On October 3, 2014, Mr. Daviesson admitted two probation violations. CT at 105, 294, 459. On April 23, 2015, the trial court executed the suspended prison sentence. RT at 569-72. On October 16, 2017, the California Court of Appeal affirmed the judgment but remanded the case for the trial court to determine if the sentence was 19 years and 4 months or 20 years. *People v. Daviesson*, No. A145074, 2017 WL 4586111 at *12 (Cal. Ct. App. Oct. 16, 2017). The superior court resentenced Mr. Daviesson to 19 years 4 months in prison. Petition (Docket No. 1) at 12.

On December 31, 2018, Mr. Daviesson filed a habeas petition in the Sonoma County Superior Court. Answer, Ex. E. He raised many claims including those presented in this federal petition. His claims challenged his no-contest plea, specifically the admission that he inflicted great bodily injury on the victim in the felony assault. He argued that his plea should be set aside because the prosecutor concealed medical records showing that there was no great bodily injury to the victim and defense counsel was ineffective for failing to investigate and discover the medical records all of which resulted in his plea not being knowing, intelligent and voluntary. Docket No. 6 at 2; Answer, Ex. E at 18-24, 31-35.[1] The superior court denied the petition on June 10, 2019, with citations to *In re Clark*, 5 Cal. 4th 750, 797 (1993), for the proposition that a habeas petitioner must raise all of his claims in one timely petition; *In re Harris* 5 Cal. 4th 813, 825, 829 (1993), for the proposition that the court will dismiss a habeas claim that could have, but was not raised on direct appeal, or was actually raised and rejected on appeal; and *In re Robbins*, 18 Cal. 4th 770, 780-81 (1998), for the proposition that the claims are untimely. Petition at 11-15. The California Court of Appeal and California Supreme Court summarily denied habeas petitions raising the same claims without comment or citation. Petition at 16-36. The claims in this federal petition only relate to one of the counts for which Mr. Daviesson pled no contest: assault inflicting great bodily injury.

The California Court of Appeal summarized the relevant facts as follows for that count:

---

[1] Mr. Daviesson previously challenged in state court the trial court's finding that he had violated probation. Those challenges were denied. *Daviesson*, 2017 WL 4586111 at *1, 15.

> On the evening of August 21, 2012, defendant's motorcycle broke down. A nearby resident, R.Q., gave a portable telephone to defendant for him to use to summon a ride. Defendant and R.Q. got into an altercation over defendant's use of R.Q.'s telephone. Using his cellphone, R.Q. called 911. Defendant became enraged and pummeled R.Q., forcing him to the ground while calling him derogatory names. R.Q. suffered a concussion, three fractured ribs, and multiple contusions and abrasions, as a result of the altercation with defendant.

*Daviesson*, 2017 WL 4586111 at *1.

### III.   JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action for a writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the conviction and sentence of a person convicted in Sonoma County, California, which is within this judicial district. 28 U.S.C. §§ 84, 2241(d).

### IV.   STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's

3

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court, if there is a reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). When confronted with an unexplained decision from the last state court to have been presented with the issue, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

The standard of review under AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim. In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. *See Plascencia v. Alameida*, 467 F.3d 1190, 1197-98 (9th Cir. 2006); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). When confronted with a state court's summary denial of a claim, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. *Plascencia*, 467 F.3d at 1198; *Himes*, 336 F.3d at 853. The federal court must still apply the deference required by Section 2254(d)(1), as noted above. *See Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. In conducting this type of review, the court must determine: "(1) 'what arguments or theories supported or could have supported the state court's decision,' and (2) 'whether it is possible fairminded jurists could disagree that those arguments or

4

theories are inconsistent with the holding in a prior decision of the Supreme Court.'" *Cook v. Kernan*, 948 F.3d 952, 966 (9th Cir. 2020) (quoting *Harrington*, 562 U.S. at 102).

## V.     DISCUSSION

A.     Great Bodily Injury

All of Mr. Daviesson's claims herein challenge his plea of no contest with respect to his admission that he inflicted great bodily injury on the victim, R.Q. He argues that: (1) the prosecutor concealed medical records proving that there was no great bodily injury; (2) defense counsel was ineffective for failing to investigate and discover the medical records; (3) his plea was not knowing, intelligent and voluntary; and (4) he is actually innocent of inflicting great bodily injury on R.Q. Petition at 6-9.

1.     Background

At the preliminary hearing on March 6, 2013, R.Q. testified that Mr. Daviesson "pummeled" him; R.Q. was "brought to the ground" and "kicked and hit." RT at 14. R.Q. also testified that he "ended up receiving three cracked ribs on the back left side," he "had a concussion," and he "was bleeding all over [his] head." *Id*. The prosecutor later entered into evidence "medical records that ha[d] been subpoenaed . . . from Petaluma Valley Hospital for" R.Q. RT at 17. At the close of the preliminary hearing, the prosecutor noted that "the medical records . . . show[ed] a concussion[] and . . . three fractured ribs, which would . . . be sufficient to substantiate the [great bodily injury] enhancement. RT at 84. The trial court found "sufficient evidence of the [great bodily injury] enhancement" and held petitioner to answer on that allegation. RT at 95.

On July 3, 2013, Mr. Daviesson pled no contest. RT at 89-94. Defense counsel noted that he and the prosecutor had "negotiated this case long and hard" and the trial court responded that the plea agreement "sounds like a good disposition." RT at 253. The great bodily injury enhancement ultimately accounted for three years of the 19 years and 4-month suspended sentence of the negotiated plea. RT at 306.

Mr. Daviesson contends herein that R.Q. did not suffer great bodily injury. Mr. Daviesson presented to the California courts and to this Court three pages of medical records that include a

5

1  brain CT scan, a cervical spine CT scan and frontal view chest x-ray of R.Q. following the assault.
2  Petition at 37-39.

    2.   Analysis

        a.   No-Contest Plea

A defendant who pleads guilty cannot later raise in habeas corpus proceedings independent claims relating to the deprivation of constitutional rights that occurred before the plea of guilty. *See Haring v. Prosise*, 462 U.S. 306, 319-20 (1983) (guilty plea forecloses consideration of pre-plea constitutional deprivations); *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973) (same); *Fairbank v. Ayers*, 650 F.3d 1243, 1254-55 (9th Cir. 2011) (petitioner's claim at the guilt phase "must be limited to the contention that trial counsel was ineffective only in advising petitioner to plead guilty"). *Tollett* and its progeny apply not only where a California defendant has pled guilty, but also where the defendant has pled "no contest" or "nolo contendere." *See*, *e.g.*, *Ortberg v. Moody*, 961 F.2d 135, 137-38 (9th Cir. 1992) (nolo contendere plea precludes petitioner from challenging alleged constitutional violations prior to entry of plea (citing *Tollett*)).

The only challenges left open to pursue in federal habeas corpus proceedings for those who pled guilty or nolo contendere is the voluntary and intelligent character of the plea and the nature of the advice of counsel to plead. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985); *Tollett*, 411 U.S. at 267. A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases. *Id.*; *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004).

In his first two claims, Mr. Daviesson argues that the prosecutor concealed medical records proving that there was no great bodily injury and that defense counsel was ineffective for failing to investigate and discover the medical records. As discussed below, neither claim warrants habeas relief. *United States v. Ruiz*, 536 U.S. 622, 629 (2002). Mr. Daviesson is not entitled to habeas relief for these two claims.

        b.   Knowing, Voluntary, Intelligent Plea

Due process requires that a guilty plea be both knowing and voluntary because it

6

constitutes the waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination. *See Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). It does not, however, require a state court to enumerate all the rights a defendant waives when he enters a guilty plea as long as the record indicates that the plea was entered voluntarily and understandingly. *See Rodriguez v. Ricketts*, 798 F.2d 1250, 1254 (9th Cir. 1986).

The long-standing test for determining the validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Parke v. Raley*, 506 U.S. 20, 29 (1992) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). This requires a review of the circumstances surrounding the plea. *See Brady v. United States*, 397 U.S. 742, 749 (1970). The totality of the circumstances includes "both the defendant's subjective state of mind and the constitutional acceptability of the external forces inducing the guilty plea." *Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007) (internal quotation marks omitted). Of particular importance is that defendant enter a guilty plea with sufficient awareness of the relevant circumstances and likely consequences, *Brady*, 397 U.S. at 748, and that he understand the law in relation to the facts, *McCarthy v. United States*, 394 U.S. 459, 466 (1969). A guilty plea not made voluntarily and intelligently violates due process. *See Boykin*, 395 U.S. at 242.

### i. Procedural Default

Respondent first argues that Mr. Daviesson's claim that his plea was not knowing, intelligent and voluntary is procedurally defaulted. The Sonoma County Superior Court denied his petition raising this claim with citations to *In re Clark*, 5 Cal. 4th 750, 797 (1993), for the proposition that a habeas petitioner must raise all of his claims in one timely petition; *In re Harris*, 5 Cal. 4th 813, 825, 829 (1993), for the proposition that the court will dismiss a habeas claim that could have but was not raised on direct appeal or was actually raised and rejected on appeal; and *In re Robbins*, 18 Cal. 4th 770, 780-81 (1998), for the proposition that his claims are untimely. Respondent argues that the claim was denied by the superior court as successive and untimely due

7

to the *Clark* and *Robbins* citations.[2]

The Superior Court's finding of procedural default must be upheld. Federal habeas relief is barred on grounds of procedural default if a state court denied claims because a petitioner failed to comply with the state's requirements for presenting them. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). The state's grounds for denying the claim must be "independent of the federal question and adequate to support the judgment." *Id.* at 729. A state procedural bar is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. U.S. Dist. Ct. (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).

The state carries the initial burden of adequately pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). If the state meets this requirement, the burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.*

To overcome a claim of procedural default, a petitioner must establish either (1) cause for the default, and prejudice, or (2) that failure to consider the defaulted claims will result in a "fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989). To show cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). To show prejudice, a petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170

---

[2] Respondent does not present any arguments regarding the citation to *In re Harris,* 5 Cal. 4th 813, 825, 829 (1993), therefore the Court will not address that case.

8

(1982)).

Respondent has demonstrated the existence of an independent and adequate state procedural ground as an affirmative defense.  The superior court denied the petition raising this claim with citations to *In re Clark*, 5 Cal. 4th 750, 797 (1993), for the proposition that a habeas petitioner must raise all of his claims in one timely petition and *In re Robbins*, 18 Cal. 4th 770, 780-81 (1998), for the proposition that his claims are untimely.

As to the petition being untimely, the United States Supreme Court has held that California's timeliness rule, as announced in *In re Robbins*, which is among the cases the state superior court cited in its denial, is an adequate and independent state ground for the denial of federal habeas corpus relief.  *Walker v. Martin*, 562 U.S. 307, 310, 312, 316-21 (2011).  Therefore, the claim is barred.

Next, having identified the *In re Clark* rule against successive petitions as another procedural bar imposed on the state habeas petition by the state superior court, this Court must consider whether that bar is independent and adequate, so as to preclude federal habeas review, *see Coleman*, 501 U.S. at 729.  Although the Ninth Circuit has not ruled on whether California's bar on successive petitions constitutes valid grounds for procedural default of federal claims, several district courts (including the undersigned) have concluded in reasoned decisions that it does.  *See e.g.*, *Luckett v. Matteson*, No. 18-cv-7670 HSG, 2020 WL 6868834, at *10 (N.D. Cal. 2020) (concluding that California's successiveness bar is adequate and independent); *Briggs v. State*, No. 15-cv-05809 EMC, 2017 WL 1806495, *6-7 (N.D. Cal. 2017) (same); *Flowers v. Foulk*, No. 14-cv-0589 CW, 2016 WL 4611554, *4 (N.D. Cal. 2016) (same); *Ray v. Cate*, No 11-cv-1604 YGR, 2014 WL 3841214, *15 (N.D. Cal. 2014) (same).  This Court adopts the reasoning of these decisions and finds that *In re Clark* constitutes an independent and adequate state procedural ground for the state court's denial of Mr. Daviesson's claim, additionally barring federal habeas review.

Procedural default, however, can be overcome if a Mr. Daviesson "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."

9

*Coleman*, 501 U.S. at 750.  The "cause standard" requires the petitioner to show that "'some objective factor external to the defense impeded counsel's efforts' to raise the claim." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray*, 477 U.S. at 488).  As to the prejudice prong, Mr. Daviesson bears the burden of showing "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Here, Mr. Daviesson has failed to meet his burden of showing cause.  Nor is there anything in the record to suggest he could make the requisite showing.  To the extent that he argues that his discovery of the partial medical records overcomes the procedural default, he has failed to meet his burden.  He provides no information how or when he obtained the medical records, nor why trial counsel should have discovered the records before Mr. Daviesson did.  Even assuming Mr. Daviesson could demonstrate cause, he cannot meet his burden to show prejudice.  He must show actual prejudice resulting from the errors of which he complains.  *See McCleskey*, 499 U.S. at 494.  As will be discussed below, his claim lacks merit and there was no prejudice due to the lack of the partial medical records at the time of his plea.[3]  For all these reasons, this claim is procedurally defaulted.

### ii.   Merits

Even if this Court were to bypass the procedural defect found by the state court, Mr. Daviesson's claim on the merits fail.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (federal habeas court may bypass question of procedural default to deny claim on merits); *see also Flournoy v. Small*, 681 F.3d 1000, 1004 n.1 (9th Cir. 2012) ("While we ordinarily resolve the issue of procedural bar prior to any consideration of the merits on habeas review, we are not

---

[3] For the same reasons that will be discussed below, Mr. Daviesson does not satisfy the second possible exception to procedural default, namely, that the court's failure to consider the claims will result in a fundamental miscarriage of justice.  The "miscarriage of justice" exception is limited to habeas petitioners who can show, based on "new reliable evidence," that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Schlup v. Delo*, 513 U.S. 298, 324-27 (1995) (quoting *Murray*, 477 U.S. at 496).  He has failed to make that showing in this case.

...
...

...
required to do so when a petition clearly fails on the merits.").

The Court has reviewed the three pages of hospital records. Mr. Daviesson has failed to demonstrate that the records are exculpatory under *Brady*. It is correct that the three pages do not affirmatively state that R.Q. suffered a concussion or multiple cracked ribs. Petition at 37-39. However, the three pages do not refute that R.Q. suffered these injuries. The three pages appear only to be part of the medical record.[4] The pages include results from a CT scan of the brain, a CT scan of the cervical spine and a chest X-ray of the frontal view with left rib series. The brain scan shows no evidence of intracranial hemorrhage and no evidence of a skull fracture. Yet, there were no allegations that these injuries occurred. While the report is silent as to a concussion, that does not demonstrate there was no concussion; nor is there any evidence that a CT scan of the brain is the proper or sole means to diagnose a concussion. Mr. Daviesson does not describe how the cervical-spine scan is relevant as there were no allegations of spinal injuries. The chest X-ray indicated a "question of a left tenth rib fracture." Petition at 39. While this X-ray does not show three cracked ribs on the back-left side, which R.Q. testified to, this is not surprising because the X-ray is only a frontal view, and it did show a fracture from that view. Notably, Mr. Daviesson has not provided any medical documentation of R.Q.'s ribs on his back-left side which are consistent with R.Q.'s testimony, and the records in question here do not shed light one way or the other on the issue. Thus, Mr. Daviesson has failed to demonstrate that these partial medical records qualify as sufficiently material and exculpatory as to call into question the validity of his plea or which would have materially aided him in trial. *See*, *e.g.*, *Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1997) (medical reports contradicting victim's account of abuse but not totally disproving crime, did not show actual innocence); *Frank v. Chavez*, 65 F. Supp. 3d 677, 693 (N.D. Cal. 2014) (jury could have credited medical testimony at trial over newly presented exculpatory medical testimony).

Even if the partial medical-record pages were deemed exculpatory *Brady* material, Mr. Daviesson is still not entitled to habeas relief to withdraw his plea. In *Ruiz*, the Supreme Court

---

[4] Respondent was unable to obtain the medical records placed into evidence at the 2013 preliminary hearing. Docket No. 18.

11

1  held "the Constitution does not require the Government to disclose material impeachment

2  evidence prior to entering a plea agreement with a criminal defendant." *Id*. at 633.  There is

3  disagreement in the lower courts as to whether *Ruiz* applies to exculpatory evidence, as discussed

4  in *Robertson v. Lucas*, 753 F.3d 606, 621 (6th Cir. 2014):

> *Ruiz* established that *impeachment* material need only be disclosed for trial.  *See United States v. Wells*, 260 Fed. Appx. 902, 903–04 (6th Cir. 2008).  Appellants contend that the evidence at issue was *exculpatory* and therefore not covered by the rule set forth in *Ruiz*.  We have not yet had occasion to determine whether *Ruiz* applies to exculpatory *Brady* material, a question that has caused some disagreement among our sister circuits.  *Compare United States v. Ohiri*, 133 Fed. Appx. 555, 562 (10th Cir. 2005) ("[T]he Supreme Court did not imply that the government may avoid the consequence of a *Brady* violation if the defendant accepts an eleventh-hour plea agreement while ignorant of withheld exculpatory evidence in the government's possession.") *and McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003) ("*Ruiz* indicates a significant distinction between impeachment information and exculpatory evidence of actual innocence."), *with Friedman v. Rehal*, 618 F.3d 142, 154 (2d Cir. 2010) ("[T]he Supreme Court has consistently treated exculpatory and impeachment evidence in the same way for the purpose of defining the obligation of a prosecutor to provide *Brady* material prior to trial, and the reasoning underlying *Ruiz* could support a similar ruling for a prosecutor's obligations prior to a guilty plea.") (internal citations omitted) *and United States v. Conroy*, 567 F.3d 174, 179 (5th Cir. 2009) ("*Ruiz* never makes such a distinction nor can this proposition be implied from its discussion.").

18  *Robertson*, 753 F.3d at 621.  There is no Supreme Court authority directly on point and the Ninth

19  Circuit has not yet ruled whether *Ruiz* does or does not require disclosure of exculpatory *Brady*

20  material in this context.  Some California district courts have concluded that after *Ruiz*, a

21  petitioner can no longer assert a *Brady* claim to attack the voluntary nature of the plea.  *See*

22  *Gonzalez v. Gipson*, Case No. 14-cv-4995 EMC, 2016 WL 3055830, at *6-9 (N.D. Cal. 2016);

23  *Clark v. Lewis*, Case No. 12-cv-2687 TLN GGH, 2014 WL 1665224, at *8 (E.D. Cal. 2014).

24  Finally, to the extent that Mr. Daviesson argues that trial counsel was ineffective for

25  advising him to enter into the plea, he is not entitled to relief.  In order to prevail on a Sixth

26  Amendment ineffectiveness of counsel claim, he must establish two things.  First, he must

27  establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of

28  reasonableness" under prevailing professional norms.  *Strickland v. Washington*, 466 U.S. 668,

12

687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. To establish prejudice from counsel's advice to accept a plea offer, petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985).

Mr. Daviesson was facing nearly twenty years in prison due to multiple counts from various crimes. Mr. Daviesson's trial counsel negotiated a plea deal with a suspended sentence where Mr. Daviesson would serve no prison time. Even the judge remarked that it was a good disposition for Mr. Daviesson.[5] Even assuming that trial counsel was deficient, Mr. Daviesson has failed to demonstrate prejudice; there is no reasonable probability that but for counsel's advice he would have instead proceeded to trial given the extremely favorable plea deal and the facts.

In particular, counsel's failure to discover the medical records, for reasons discussed above, were not material and exculpatory. They do not conflict with R.Q.'s testimony. Moreover, the plea was a highly favorable one which Mr. Daviesson likely would have accepted even if he knew about the medical records. The great bodily injury enhancement accounted for three years of the sentence. If that enhancement had been dismissed, Mr. Daviesson was still facing a sentence of more than sixteen years. He has presented no arguments that he still would have proceeded to trial rather than accept a plea which offered no actual jail time.

In reviewing the prejudice prong, courts "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 137 S.Ct. 1958, 1967 (2017). The question is not whether a reasonable probability exists that the defendant would have obtained a better plea agreement, but for his counsel's alleged errors. *Premo v. Moore*, 562 U.S. 115, 131-32 (2011). The question is

---

[5] The judge further stated with respect to the plea deal with the prosecution, "[f]rankly, the fact that you're getting this offer, this opportunity I think takes into account that you have--you know, you served your country honorably, our country honorably, you went through I'm sure some unthinkable awful things. . . the fact that you're getting this opportunity with these offenses behind you is recognizing that you are, you know, worthy of having an opportunity to change." RT at 306.

13

whether defendant "established the reasonable probability that he would not have entered his plea but for his counsel's deficiency". *Id*. at 130. The medical records at issue would not have had any impact on the plea offer. As discussed above, the records did not refute the injuries to the victim, thus had little probative value. There would have be no reason for the prosecution to offer a better plea than the no-jail time plea which was offered.

Mr. Daviesson has not met his burden in establishing an ineffective assistance claim in connection with his acceptance of the plea. *See United States v. Freeny*, 841 F.2d 1000, 1001-02 (9th Cir. 1988) (petitioner did not show prejudice under *Hill* where he accepted an eight-year sentence instead of facing the possibility of twenty years of prison on each of the forty-one counts of the indictment).

        c.    <u>Actual Innocence</u>

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id*. It is "still an open question" whether federal habeas relief is available based on a freestanding claim of actual innocence. *Taylor v. Beard*, 811 F.3d 326, 334 (9th Cir. 2016) (en banc) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 384 (2013)).

To the extent that Mr. Daviesson raises an independent claim of actual innocence and he can proceed with such a claim, he will not be entitled to relief. As noted above, the three pages of medical records fail to show that he is actually innocent of committing great bodily injury. To the extent that Mr. Daviesson raises actual innocence to overcome procedural default, the Court has already reviewed the above claim on the merits. This claim is denied.

    3.    <u>No Certificate of Appealability</u>

A certificate of appealability will not issue because reasonable jurists "would not find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is denied.

14

## VI. CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**. Petitioner's motion (Docket No. 19) to review the partial medical records he provided and not wait for the full medical records is **GRANTED** and the Court has reviewed the records provided by the parties that was presented to the state courts. The Clerk shall enter Judgment and close the file.

**IT IS SO ORDERED**.

Dated: August 9, 2021

EDWARD M. CHEN
United States District Judge